Gilmore, J.
Erom the alternative writ and answer filed in this case, the following facts appear :
First. That the relator, Joseph Seiter, was employed as •one of the superintendents of street improvements, by the board of improvements of the city of Cincinnati.
Second. That he was to be paid twenty-four dollars per week for his services.
'Third. That he performed services under his employment for the week ending May 8, 1875.
Fourth. That after the labor was performed, the board of improvements issued a certificate in favor of the relator, authorizing Hoffman as city auditor, under the ordinance •of July 23, 1856, to issue his warrant on the city treasurer for twenty-four dollars.
Fifth. That Hoffman refused to issue the warrant on two grounds: 1. That at the time the board of improvements ■employed the relator, and at the time he performed the ser-' vices for which the certificate issued, there was no money in the treasury especially set apart to meet such expenditure ; and 2. That Hoffman, as city auditor, had not certified to the city council that there was money in the treasury, especially set apart to meet such expenditure.
Sixth. That Hoffman, as city auditor, still refuses to issue such warrant, notwithstanding there is now money in the treasury especially set apart to meet such expenditure, and the fact has been duly certified to the city council by him.
The questions pi’esented require a construction of an act, *' To authorize the issuing of bonds, and to regulate the *330 making of contracts in certain cities,” passed April 16,1874' (71 Ohio L. 80), and especially the third section of the act. The first section contains a grant of power to the city of Cincinnati to issue bonds for one million of dollars, on which to raise money “ to be used only for the purpose of paying off the present floatiug debt of said city in the manner and form hereinafter directed.”
The second section provides for the appointment of a. commission to ascertain the “ present floating debt of said city, and by whom bona fide held, and to whom payable, to an amount not exceeding one million of dollars,” and when ascertained, to be paid by the proceeds of the bonds authorized by the first section. The third section reads as follows : “ From the taking effect of this act, no ordinance or other order for the expenditure of money shall be passed by the city council, or any board, or any officer, or auy commissioner having control over the moneys of the city, without stating specifically in such ox-dinance or order the items of expense to be made under it, and no such ordinance or order shall take effect until the auditor of said city shall certify to the city council there is money in the treasux’y especially set apart to meet such expenditure, and all expenditures gx’eater than the amount specified in such ordinance or ox’der shall be absolutely void, and no party whatever,, shall have any claim or demand against said city therefor; nor shall the city council, or any boax’d, or any officer, or any commissioner of said city, have any power to waive or qualify the limits fixed by such ordixxance or order, or fasten upon said city any liability whatever for axxy excess of such limits, or release any party from an exact compliance with his contract under such ordinance or order, nor shall any member of the city council or board of alderman of said, city, have or hold any interest in any contract on behalf of said city, nor any interest in the expenditure of any money on the part of said city, in any shape or form whatever other than his fixed compensation ; and any violation of the provisions of this act shall disqualify the party violating them from holding any office of trust or profit in said city, *331 and render him liable to said city for all sums of money or other things he may receive against the provisions of this-act, and if in office, he shall be dismissed therefrom.”
Counsel for the relator claims that the construction which the auditor ha3 put upon this section is not warranted, because : 1. This section did not prohibit the board of improvements from employing Seiter, although there was no-money, at the time, in the treasury to pay him. 2. That the order or certificate issued to him by the board, authorizing the auditor to draw a warrant in his favor on the treasurer for the amount, was not void, but could only take-effect upon the auditor certifying to the council the fact that there was money in the treasury set apart for the payment of such order. 3. ££ That it is legal to pass an ordinance or' other order for the expenditure of money when the items therein are specifically stated, and that the council of said city, or any of its officers or boards, can go on passing such, ordinances and orders, and can make contracts and employ persons in the various departments of the city, and such action is legal, but can not be of any effect until the auditor-has certified as above referred to. In any event, contracts-can be made by said council, and the different officers and boards of said eity, for various purposes, without reference to said act.” 4. ££ The question raised in the ease is an important one, and its decision affects all the -departments of the city. If it is held that no contract can be made, and no person employed when there is no money in the treasury at the time the contract was made, and the person employed, to meet such expenditure, it will practicably put an end to-the municipal government. The sick will be turned out of the hospital; the criminal out of the work-house; the-police force of the city will be disbanded; the streets will remain uncleaned, and the poor will be driven from the infirmary.”
Waiving for the moment the soundness of these claims-as legal propositions, it is proper to say that it is the duty of the court, if possible, to avoid giving to the act a construction that will lead to results so terrible as those sug *332 gested, for the reason that it is not to be presumed that the legislature could possibly have intended such results to follow from the enforcement of the law. In order to ascertain whether it is probable that any such result will follow a decision adverse to the relator in this case, it becomes nec ■essary to examine the act in question, and ascertain its relation, if any, to other laws affecting the city government, .and the object the legislature had in view in passing the act
Although not expressly declared to be so, this act is supplementary to the municipal code relative to cities of the first class, of which it now forms a part, and they are to be taken together as if they were one law, and are therefore to be compared in construing them; for it is supposed that they were framed upon one system, having one object in view, and that the intention was to imbue every part of the code as supplemented, with the same spirit and policy, and thereby render it consistent and harmonious in all its parts and provisions.
In construing the act, resort will be had to the usual rules, which are by ascertaining: 1. What were the provisions of the municipal code of cities of the first class on the same subject, before the passage of the supplementary act? 2. What was the mischief or defect against which the municipal code did not provide ? 3. What remedy did the supplementary act provide ? 4. The true reason of the remedy.
As to the first, the code provides for a board of improvements, a civil engineer, a street commissioner, and a committee on streets, who could employ superintendents of street improvements, in which capacity the relator rendered the service for which he claims payment. It also provides for raising means by general and special taxation for improving, cleaning, and repairing streets, and maintaining bridges. It further provides that money collected for these, can not be appropriated or used for any other purposes. It also provides that council may anticipate the tax levied for street-cleaning purposes, by temporary loans for that purpose. Having made these provisions *333 among others, it prohibits the council from making appropriations or contracting debts for the ordinary purposes of' the city, “ exceeding the amount of taxes and revenues from other sources for the current year.”
As to the second : The mischief or defect against which the code did not provide, may be unmistakably inferred from the provisions of the first section of the supplementary act. Notwithstanding the provisions of the code against going in debt for ordinary purposes, beyond the revenues of the current year, they seem to have been wholly inadequate, and a floating debt of a million dollars had been by some means saddled upon the city. It is plain that such a debt could not have been in existence if the annual expenditures for ordinary purposes had been kept within the revenues of each current year. It may be inferred that this result had probably been brought about partly through the instrumentality of contracts not very definite in their terms respecting what was to be done, or the price to be paid for it, and partly through contracts entered into and performed without there being money on hand to pay the expense, and rs-juiring expenditures greater than the current annual revenues would meet. The second section of the act shows that this immense floating debt was, to some extent at least, unascertained as to either amount, ownership, form, or validity, and to reduce this floating debt to certainty in these respects, a commission was provided for by this section. These in a general way indicate the mischief, and that it was of a serious character, and also the defects’ through which it had originated.
Thirdly, as to the remedy provided by the act, this was intended to be twofold : Eirst, to provide by extraordinary means for the liquidation of the then existing floating debt of the city, and thus relieve it from a great embarrassment; and secondly, to prevent a recurrence of a similar condition of things in the future. The first and second sections of the act were intended to effect the first, and the third section the second of these. The remedy for the first is easily comprehended. It is a bonded interest-bearing debt of a.’ *334 •.million of dollars, created to pay off a floating debt that had not been, and probably could not be otherwise provided for.
The remedy for the second, as provided in the third section, is: 1. To require every ordinance or order for the expenditure of money, by whatever authority ordered, to .state specifically the items of expense to be made under it. 'This, if observed, will prevent expenditures in excess of the current revenues. 2. That no such ordinance or order shall take effect until there is money in the treasury espe-cially set apart to meet the itemized expenditures. This is plain and imperative, and if practicable, of which Twill .speak hereafter, it will most certainly prevent expenditures in excess of the current revenues for the ordinary expenses ■of the city government. But apparently fearing that these .provisions might not effectually prevent such excessive expenditures, it is provided that “ all expenditures greater than the amount specified in such ordinance or order, shall be absolutely void,” and all persons in authority are prohibited from waiving or qualifying this consequence as to the excess over the limits fixed by the ordinance or order ; .and a legal inference from the language used, although .-not expressed, is, that services performed under an ordinance or order for the expenditure of mouey, before the .same took effect as provided by the act, will not create a liability against the city, for the reason that the service was ^unauthorized, and for the further reason that if this can be permitted, it will open the door to the repetition of the very evils and mischiefs that it is the object of the third •section to prevent. There are other restraining provisions in this section not necessary to be now noticed, except to ■say that they are intended to make the remedy against excessive expenditures thorough, complete, and absolute.
Fourthly, the true reason of the remedy is, that every .citizen is interested in the strict administration of the law in all respects, and in a case like this he is especially entitled to its protection against the imposition of unlawful .and unreasonable burdens upon his property in the way of *335 taxes to pay off floating debts of the city, created or incurred by means of unlawful and excessive expenditures in the administration of the ordinary affairs of the municipal government.
We will next ascertain, if possible, whether the apprehended calamities or embarrassments suggested by the relator’s counsel are likely to occur from a strict enforcement of the provisions of the third section of the act in respect to the improvements, repairs, and cleaning of the streets or maintaining of the bridges of the city, for it is not intended that this decision shall reach beyond the question before us. We have already shown that the city has power, under the code, by special taxation, to raise such sums of money, not exceeding the specified limits, as may be necessary for this purpose, and there is no suggestion that the amoun t permitted to be raised is not ample. Further, we have shown that the street department is one of the favored objects of the code. For this the council may make temporary loans in anticipatioq of the tax levied. With these advantages in their favor, under a prudent and efficient administration of the law, by the city council and other boards or officers in charge, money sufficient for the wants of this department can be kept in the treasury at all times, and we fail to see how the strict enforcement of the third section of the act in question can result in any of the consequences apprehended by the relator’s counsel. On the other hand, we think the act a salutary one in this respect, and that its provisions can be enforced in this class of cases without putting the public interests in jeopardy. We think the relator’s claim is one upon which the third section operates and defeats for these reasons:
1. His employment was unwarranted, as there was no ordinance or order authorizing it in force at the time of his employment, or at the time the service was performed, and therefore created no liability against the city.
2. It is not, as claimed by the relator, the certificate or order authorizing payment for services performed when *336 there was no money in the treasury, that is to take effect when the auditor certifies that there is money in the treasury set apart to meet such expenditures, for such an order is not within the meaning of the third section ; but it is an ordinance or order authorizing the performance of labor and expenditure of money, that is within the statute and that is to so take effect, on the city auditor certifying to the council that there is money in the treasury to meet the expenditure.
We are of opinion, therefore, on the case made, that the-city auditor properly refused to issue a warrant on the city treasurer for the payment of the relator’s claim.

Motion overruled.

McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.